LARIO, J.T.C.
This matter was originally filed in the Superior Court, Chancery Division, docket no. F-5428-86, as an in rem tax foreclosure action by the City of Camden against premises listed on the city’s tax map as Block 214, Lot 21, 23-33 North Fourth Street, assessed to Camden Masonic Association (CMA).
Defendant filed an answer denying the existence of any delinquent taxes claiming it had been granted tax exemption for many years which continued to date. It counterclaimed that its exemption had never been lawfully revoked; that no *335 lawful tax assessment had ever been levied against it; that plaintiff had never lawfully served notice of the revocation or reassessment upon defendant; and, it demanded that its tax exemption be reinstated for all years in question.
By reason of the stipulations and admissions filed by the parties, and particularly the city’s admission that it never gave the CMA notice of the revocation of the exemption or notice that the subject property was included as an omitted assessment for the tax years 1983 and 1984, and the county board agreement that, if applicable, the correct assessment was $50,-000 and not $394,400, the Chancery Division determined that equity required that the matter be bifurcated and all issues concerning the tax assessment be transferred to the Tax Court of New Jersey to make findings of fact, conclusions of law and enter judgment concerning the exempt status of the property for all years in issue, the correctness as to both procedure and amount, if applicable, of the omitted assessments for the years 1983 and 1984, the correctness of the assessment for the tax year 1985 and the effect of the county board stipulation for the tax year 1986.
From the stipulations, admissions and evidence presented I find as follows:
The subject property was acquired by CMA on September 8, 1928 and thereafter it was granted tax-exempt status pursuant to N.J.S.A. 54:4-3.6. Tax exemption was granted continuously thereafter to and including the tax year 1984. In 1984, as the result of an inquiry by a local attorney indicating he wished to purchase the property, the city’s assessor visited the site. The assessor had no record of the exact date of his visit other than his recollection that the weather was warm, and therefore, he concluded it probably was May, June or July. At that time he observed that the doors and windows of the subject property had been removed or broken, the building vandalized inside and out, and obviously vacated. As a result of his observation he decided that the building should lose its tax exemption and be placed on the assessment rolls. He also determined to initiate *336 an omitted tax procedure against the property and shortly thereafter he so instructed the person in his office who was in charge of carrying out the procedure for omitted assessments. It was his understanding that the “original” omitted assessment procedure, N.J.S.A. 54:4-63.12, was utilized. He stated that the procedure was “put in motion” and the list submitted before October 1, 1984, however, he could locate no records in his office files relative to the omitted assessment for the tax years 1983 and 1984, nor were there any records to indicate exactly what was done or when. He stated he had never notified CMA that he was terminating its tax exemption and he admitted that he had not given any notice of the omitted assessment to CMA. Although not placed in evidence, it appears, from the alleged tax delinquency of $128,120 for the tax sale certificate covering 1983 and 1984 listed in the tax foreclosure proceeding, that the omitted assessment was a total of $394,400 for each of the tax years 1983 and 1984.
For each of the tax years 1985 and 1986 the assessor placed a regular assessment on the tax rolls as follows:
Land: $ 9,000
Improvements: 385,400
Total:_$394,400
CMA had previously filed with the assessor its initial statement of exemption as required by N.J.S.A. 54:4-4.4. This statute also provides, in pertinent part, that after the initial statement has been filed, the assessor is required every third succeeding year thereafter to obtain a “further statement” from the owner which was complied with up to 1969. The last “further statement” application for continuance of exemption pursuant to this statutory requirement on file with the assessor’s office was dated October 20, 1969 and signed by “Jackson F. Cronk, President of the Camden Masonic Association” and the address given was 23-45 North Fourth Street, Camden, New Jersey. Thereafter, no further statement was ever secured by the assessor.
Plaintiff stipulated that its assessor gave no notice to CMA of the revocation of the property’s exempt status and that no *337 notice was forwarded to CMA that CMA’s property was being or had been assessed as an omitted assessment for the tax years 1983 and 1984. Defendant stipulated that it had not used the subject property for tax-exempt purposes since the year 1974.
The tax collector, whose testimony was submitted by way of his deposition, stated that when his office received the record of omitted assessment from the assessor’s office, its procedure was to prepare a tax bill and mail it to the taxpayer. He could not state when and to whom the tax bill for CMA for the 1983 and 1984 omitted assessments had been mailed in that the collector’s office had no record of copies of the omitted assessment billings for those years. He also stated that his files did not contain a record of the first half 1985 billings; the earliest record being a copy of the billing for the second-half 1985 which indicated an address of: “Camden Masonic Association, 815 Merrier Avenue, Collingswood, New Jersey.” The copy of the first-half 1986 tax bill indicated the same address. There is no street in Collingswood spelled “Merrier,” however, there does exist a Morri/i Street. The Collingswood address is not set forth on the exemption application. No testimony was placed in evidence to indicate why the tax bill was mailed to the Collingswood address.
The taxes billed for 1983 and 1984 for the subject property were never paid. The delinquent taxes for the property for those years were listed for tax sale and advertised in the local newspapers on October 11, 1985 and three successive weeks thereafter. The tax sale certificates were received by the city, and on July 20, 1986 the instant in rem tax foreclosure proceeding was filed. Thereafter the answer and counterclaim heretofore referred to was filed by defendant in the Chancery Division.
CMA also filed with the Camden County Board of Taxation, prior to August 15, 1986, an appeal from the assessment levied for the tax year 1986. In its complaint it alleged that the assessment was invalid in that the subject property had been *338 previously granted a tax exemption and that the city failed to lawfully revoke the exemption; and in the alternative, that the assessment was excessive. In that proceeding a stipulation was entered into between the parties and concurred with by the county board that whereas the issue of exemption had been raised and was pending determination in the Superior Court, Chancery Division proceeding, all parties would be bound by that determination. In the event the subject property was not deemed exempt then the correct assessment would be the same as reflected by the stipulated judgment entered by the Camden County Board of Taxation for the tax year 1986.
The initial issue to be determined by this court is whether, since defendant had been previously granted tax exemption, the exemption could be revoked without the city’s first giving to it proper notification pursuant to N.J.S.A. 54:4-4.4 as allegedly required by N.J.S.A. 54:4-3.68 which provides:
The tax exemption established by this act shall be granted or revoked pursuant to the provisions of P.L. 1951, c. 135 (C. 54:4-4.4), except as otherwise provided herein. [Emphasis supplied].
Defendant’s above-stated claim concerning the procedure for revocation is incorrect in that the tax exemption established “by this act” referred to in N.J.S.A. 54:4-3.68 is the tax exemption granted to “natural open space areas for public recreation and conservation purposes” as permitted under L.1974, c. 167 (N.J. S.A. 54:4-3.63). It is inapplicable to the exemption which was granted to defendant’s property which was applied pursuant to N.J.S.A. 54:4-3.6.
N.J.S.A. 54:4-1 directs that all real property “not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter.” Emphasis supplied. The subject property was originally exempted from taxation as “buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women, and children____” N.J.S.A. 54:4-3.6.
*339 N.J.S.A. 54:4-23 implements the annual taxation requirement of N.J.S.A. 54:4-1 by directing the taxing district’s assessor to assess the real property as of October 1 of each year. Accordingly, all real property in New Jersey is assessed as of October first, annually. October first of each year is the determinative date not only of the property’s value for assessment purposes but also for its qualification for tax exemption. In Jabert Operating Corp. v. Newark, 16 N.J.Super. 505, 85 A.2d 216 (App.Div.1951), Justice William J. Brennan, Jr., then a judge of our Appellate Division, stated:
Property is assessable or exempt with reference only to its ownership and use on October 1 preceding the calendar year. Jersey City v. Montville, 84 N.J.L. 43 [85 A.2d 838] (Sup.Ct. 1913), affirmed 85 N.J.L. 372 [91 A.2d 1069] (E. & A. 1913)____ The listing of the property as exempt requires that the owner on October 1st satisfy the statutory requisites both as to ownership and use. [at 508-509, 85 A.2d 216]
For the subject property to continue qualifying for the benefits of tax exemption pursuant to N.J.S.A. 54:4-3.6, on October first of each year the buildings must be “actually used for the moral and mental improvement of men, women and children.” Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 506, 472 A.2d 517 (1984); see also Boys Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 404, 371 A.2d 22 (1977); N.J. Turnpike Auth. v. Washington Tp., 16 N.J. 38, 44-45, 106 A.2d 4 (1954).
Thus, in the instant case when, in 1984, the assessor concluded, from his observation of the subject building’s vandalized condition, that it was not being used and could not be used within the immediate future for any purpose, he had the obligation to assess the property regularly without a tax exemption as of October 1, 1984 for the full tax year 1985. Trenton Church of Christ v. Trenton, 3 N.J.Tax 267 (Tax Ct.1981). And, since he also concluded that the property probably had not been used on October 1, 1982 and on October 1, 1983 and the respective calendar years thereafter for the purposes for which exemption had previously been granted, he had the authority to institute proceedings to impose omitted assessments for those years.
*340 N.J.S.A. 54:4-1 in pertinent part provides: “Property omitted from any assessment may be assessed by the county board of taxation, or otherwise, within such time and in such manner as shall be provided by law.” Emphasis supplied.
“By law” our Legislature has provided assessors with two separate procedures for the imposition of omitted assessments “in any tax year or in the next succeeding year”; namely, N.J.S.A. 54:4-63.12 et seq., referred to as the “original” procedure, and N.J.S.A. 54:4-63.31 et seq., the “alternate” method. See Gale Builders, Inc. v. Hunterdon Cty. Bd. of Tax., 8 N.J.Tax 16, 20, 22 (Tax Ct.1985). The two procedures differ in that the “alternate” method provides for the omitted assessment to be placed on the omitted assessment tax rolls prior to any quasi -judicial review by the county board; whereas the “original” provides for the placement after such a review.
Although the assessor testified that he believed the original method was utilized, it is clear that since there was no county board judgment entered imposing the omitted assessments for 1983 and 1984, N.J.S.A. 54:4-63.14, the only procedure that could possibly have been attempted was the alternate procedure, N.J.S.A. 54:4-63.31 et seq.[1] Under this latter method the assessor must have first reflected the assessed value of the omitted subject property on the “omitted assessment list” which he submitted to the county board by October 1, 1984, and, if certified, the omitted taxes assessed would have been delivered to the assessor and the tax collector by October 10, 1984, N.J.S.A. 54:4-63.32. There was no evidence presented that the submission was complied with or that the county board certified and submitted the taxes assessed to CMA to the assessor and tax collector. Assuming the assessor received the return of the omitted assessment taxes for the subject property, certified by the county board, N.J.S.A. 54:4-63.35 then required that:
*341 [a]s soon as the certified copy of the omitted assessment list is received by the assessor from the county board the assessor shall cause a notice to be sent by certified mail to the owner of each of the properties affected stating that an omitted tax assessment has been made as to the taxpayer’s property and that the tax payable as a result thereof may be ascertained from the collector of taxes of the taxing district.
N.J.S.A. 54:4-63.39 further provides that an appeal shall be made to the county board of taxation on or before December 1 of the year of the levy and that appeals from the county board’s judgment shall be made within 45 days from the date fixed for final decisions by the county board.
This court is cognizant that Camden, as most cities of New Jersey, has many “line-items” whose values are annually changing dramatically resulting in a tremendous work-load for the assessor in that he is required to delegate many of his duties to members of his office staff and that it was reasonable for him to assign to the person in charge of omitted assessments the task of so assessing the subject. Although the assessor intended that the “original” method be implemented it is evident his staff opted to use the less stringent “alternate” method. Even though this alternate method is certainly permissible, the procedures followed must be in “accordance with the provisions of this act.” N.J.S.A. 54:4-63.31.
 Tax laws are creatures of the Legislature and as such are to be strictly construed. Clairol, Inc. v. Kingsley, 109 N.J.Super. 22, 26, 262 A.2d 213 (App.Div.1970), aff’d o.b. 57 N.J. 199, 270 A.2d 702 (1970), app. dism. 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971). The procedural prerequisites of the omitted assessment statutes must be strictly complied with.
An omitted assessment levied without first complying with the statutory procedure prescribed by either the original or alternate omitted assessment statute will be invalidated upon timely appeal to this court. [Little Egg Harbor Tp. v. AT & T & Tuckerton Bor., 9 N.J.Tax 314, 323 (Tax Ct.1987)]
I find specifically that the statutory “alternate method” procedure for assessment of omitted property was not complied with, in that the city has failed to establish that: (1) it assessed the property as omitted and included it on the assessor’s omitted list and submitted it to the county board prior to *342 October 1,1984; (2) the assessment was certified by the county board, (both of which are required by N.J.S.A. 54:4-63.32); and, (3) most important, it did not give any notice whatsoever to the owner as directed by N.J.S.A. 54:4-63.35. I further find that the tax collector never gave proper notice to the owner of the tax payable as a result of the omitted assessment. N.J.S.A. 54:4-63.36. I also find that the owner had no knowledge of the omitted assessment until after the foreclosure proceedings had been instituted', and therefore, it never had an opportunity to appeal in accordance with the provisions of N.J.S.A. 54:4-63.39. Accordingly, under the factual circumstances herein, failure to comply with the notice requirements of the statute and due process require that CMA be given the opportunity to contest the correctness of the omitted assessment within a reasonable time of its having acquired knowledge thereof and I find that CMA did contest same within a reasonable time period. Cairola-Barber, etc. v. Ft. Lee, 2 N.J. Tax 262, 268 (Tax Ct.1981). Having failed to comply with the statutory requirements of N.J.S.A. 54:4-13.31, I conclude that the omitted assessments placed against the subject property for 1983 and 1984 are invalid and the taxes levied thereby for those years are also invalid. Little Egg Harbor Tp. v. AT & T & Tuckerton Bor., supra, 9 N.J.Tax at 323. Compare American Hydro Powers Partners v. Clifton, 9 N.J.Tax 259, 263 (Tax Ct.1987) (Omitted assessment invalidated by reason of taxing district’s failure to comply with added assessment statute).
Pursuant to the Chancery Court’s directive, the issues to be addressed next are the validity of the regular assessments placed for the tax years 1985 and 1986. It was stipulated by CMA that it did not utilize the subject property for any purposes in 1985 and 1986, nor on the respective assessing dates of October 1 of the pretax years. Although CMA is organized for tax-exempt purposes recognized by N.J.S.A. 54:4-3.6, since the property was not used for tax-exempt purposes on October 1, 1984 nor at any time thereafter, it is not entitled to the benefits of tax exemption in 1985 or 1986.
*343 Since the subject property was not tax exempt on October 1 of the pretax years, the assessor was required by N.J.S.A. 54:4-1 to impose a regular assessment for the tax years 1985 and 1986 which he did.
We hold that property whose exempt status had been lost prior to October 1 of the pretax year can be put on the regular tax rolls as of January 1 of the following year without utilizing the omitted assessment procedure. [St. Michael’s Passionist Monastary v. Union City, 195 N.J.Super. 608, 613, 481 A.2d 304 (App.Div.1984)]
Although the tax assessor had the authority to place 1985 and 1986 regular tax assessments on the rolls as of October 1 of the pretax year, since the subject property had been tax exempt for the years immediately prior thereto, and no notice of its reinstatement to the tax rolls had been received by CMA, due process requires that notice of the regular assessment or the resulting tax bill should have been forwarded to the owner in order to afford it an opportunity to file a tax appeal in accordance with the statutory procedure provided by N.J.S.A. 54:4-21. See Cairola-Barber, etc. v. Ft. Lee, supra, 2 N.J.Tax at 268. The requirements of due process have not been met unless the person charged with an excise has been given an opportunity to be heard as to the validity and the amount of the levy at some point in the proceedings before the excise becomes irrevocably final. Horseman Dolls, Inc. v. Unemployment, etc. of N.J., 7 N.J. 541, 550-551, 82 A.2d 177 (1951).
In the case under review for the tax year 1985 neither notice of the assessment nor the tax bill was forwarded to the owner either to the address of the subject property or to the owner directly. A delay in the required notice of a tax imposed delays the time for appeal. Id. at 551, 82 A.2d 177. By reason thereof and because the owner has a meritorious defense to an assessment almost eight times greater than the $50,000 assessment stipulated before the county board and *344 herein[2], I conclude that the taxpayer had the right within a reasonable time after receiving the notice to attack the quantum of the 1985 assessment. Becker v. Little Ferry, 126 N.J.L. 338, 339, 19 A.2d 657 (E. & A. 1941).
I further find that CMA did act within a reasonable time to contest the assessment for 1985; therefore, in accordance with the directive of the Chancery Division and my independent findings and conclusions, the issue of the correctness of the 1985 assessment is properly before this court.
Inasmuch as the parties have stipulated that the correct assessable value of the subject property for 1985 is $50,000, judgment is so ordered, allocating $9,000 to land and $41,000 to improvements.
For the tax year 1986, the issues of both exemption and the quantum of the assessment were properly and timely appealed to the county board and the board had jurisdiction to decide both issues which it should have exercised. Instead, the county board entered judgment reducing the total assessment to $50,-000 but held in abeyance any action thereon pending determination of the property’s tax-exempt status. For the reasons heretofore given, the taxpayer’s cause of action for the 1986 tax year based upon exemption is dismissed and the county board’s judgment reducing the original assessment from $394,-400 to $50,000, is affirmed and is allocated as follows:
Land: $ 9,000
Improvements: $ 41,000
Total: $ 50,000
*345 The clerk of the Tax Court is directed to enter judgments in accordance with this opinion.

Since a mid-year changed, prorated, assessment, was not levied for either year, N.J.S.A. 54:4-63.28 is not applicable.

It has come to the court's attention that subsequent to the filing of this opinion the subject property was sold for a total consideration of $35,000. The "average ratio" of assessed to true value of real property for the City of Camden for the tax years 1985 and 1986, as promulgated by the Director, Division of Taxation pursuant to N.J.S.A. 54:1-35a was 48.93% and 45.17% respectively. Applying these ratios to a presumed true value of $35,000, Murnick v. Asbury Park, 95 N.J. 452, 471 A.2d 1196 (1984), results in assessments of $17,125 and $15,810 respectively.