CRABTREE, J. T. C.
This is a local property tax case wherein plaintiff seeks review of judgments of the Hudson County Board of Taxation granting exemption to defendant’s property for the tax years 1979 and 1980.
The property in question, known and designated as Block 1639A, Lot 5C, consists of approximately 51 acres of unimproved land lying between State Routes 1 & 9 and the Hackensack River in plaintiff municipality. Directly across the highway is the Holy Name Cemetery, also owned by defendant, comprising *595 65 acres. The burial space in that cemetery is nearly exhausted. Virtually all burial plots are either filled or sold. No burials have ever taken place on the subject property, nor have any burial plots been sold there.
At all times here pertinent the subject property has been utilized to support the operation and maintenance of the cemetery. Excess fill from grave sites was deposited there daily; stones for use in foundations and headstones were stored there, and compost piles were made on the property.
The subject property could be developed for burials.
Defendant, a religious corporation organized under the provisions of Title 16, N.J.S.A. was confronted in 1978 with demands by financial institutions to reduce its long-term debt and, in aid of such reduction, decided to sell the subject property.
On April 13, 1978 defendant granted an option to a corporation known as “1 & 9” Truck Plaza, Inc. to purchase the property for $1,300,000. The optionee paid $500 for the option, which was to expire on June 16, 1978. The option agreement called for a payment of $130,000 upon exercise of the option. The optionee’s avowed objective was the construction of a major commercial facility employing large numbers of people. Plaintiff indicated to defendant that it supported the project and sought federal grants (presumably environmental approvals) and state environmental permits therefor.
The option agreement was conditioned upon the conveyance of a riparian grant by the State of New Jersey.
On or about April 1, 1979 the option agreement was modified by written instrument extending the option period to October 15, 1979 and calling for the execution and delivery to defendant of certain promissory notes by that date. Shortly before October 15, 1979 the option agreement was modified further by extending the option period to April 15, 1980, conditioned upon the payment of $10,000 monthly beginning October 15, 1979.
On January 31, 1980 defendant entered into a revised option agreement with a joint venture composed of the original op *596 tionee and a corporation known as River Terminal Development Urban Renewal Corporation. This agreement extended the option period to July 15,1980, provided that the optionee paid to defendant $10,000 on or before January 31, 1980 and a like amount on the 15th day of each of the two succeeding months, and $20,000 each month for the months of April, May and June 1980.
In or about March 1980 the optionee under the January 31, 1980 agreement defaulted and the option was cancelled, the cancellation being reflected in a written agreement dated September 9, 1980.
At no time here pertinent was a contract of sale executed with respect to the subject property.
At issue is defendant’s entitlement to exemption in view of its efforts to sell the property for nonexempt uses.
The operative statute is N.J.S.A. 54:4-3.9, which provides:
Graveyards and burial grounds used or intended to be used for the interment of bodies of the dead or the ashes thereof not exceeding ten acres of ground, and cemeteries and buildings for cemetery use erected thereon, and all mausoleums, vaults, crypts or structures intended to hold or contain the bodies of the dead or the ashes thereof, and solely devoted to or held for that purpose shall be exempt from taxation under this chapter.
The disposition of this case is governed by the principles set forth in Beth Israel Cemetery Ass’n v. Woodbridge, 1 N.J.Tax 149 (Tax Ct.1980), aff’d per curiam 180 N.J.Super. 508 (App.Div. 1981), certif. den. 87 N.J. 416, 434 A.2d 1091 (1981). There, the cemetery association entered into a binding contract of sale on April 12, 1974, the sale was approved by the New Jersey Cemetery Board on June 12,1974 and the sale was consummated on August 10, 1976. (The required zoning approvals were obtained on or about June 15, 1976.) The property forming the subject matter of the sale had been exempt from property taxation for all years prior to 1975. The exemption was revoked for that year and for 1976 on the ground that, with the execution of the April 12,1974 agreement, the property was no longer “dedicated to cemetery purposes” within the meaning of N.J. S.A. 8A:5-10, the statute granting property tax exemption to *597 lands of cemetery companies devoted to cemetery use. Judge Andrew of this court, in upholding the revocation of the exemption, said:
... The operative fact is not the execution of a conditional sales contract nor the submission of an application for approval of the sale by the cemetery board nor the elimination of the conditions within the contract nor the actual consummation of the contract. The operative fact is that the plaintiff determined that the subject property was no longer necessary or suitable for interment purposes. Once having determined that the land was no longer necessary or suitable for its original purpose, that which could actually transpire thereafter is unimportant. The land was not intended to be used for eemetery purposes and therefore was not “dedicated” to this stated use. [1 N.J.Tax at 156]
The Appellate Division, in affirming Judge Andrew on appeal, said:
The tax exemption granted to a cemetery company under N.J.S.A. 8A:5-10 continues so long as the cemetery company actually holds its land for cemetery purposes or contemplates using its land for cemetery purposes in the “reasonably anticipated future.” .. . We conclude that plaintiff’s determination to sell the land and thereafter actually taking steps to divest itself of title constituted an abandonment of the dedication of the land in question for cemetery use. [180 N.J.Super. at 510 -511]
Defendant attempts to distinguish Beth Israel because it involved a different statute. Furthermore, defendant argues, the property owner in that case entered into a binding contract of sale which was ultimately consummated, whereas in the instant case a mere option was involved and that option was ultimately cancelled. Defendant’s arguments are wide of the mark. In the first place, N.J.S.A. 8A:5 10 and N.J.S.A. 54:4-3.9 are cognate enactments. Both predicate tax exemption upon the landowner’s intention to hold the property for specified uses and purposes. Secondly, intention being the guiding indicium, the nature of the arrangement made by the landowner to dispose of the property, be it a binding contract, a conditional contract, or an option, and the ultimate disposition thereof, are irrelevant. What matters is the existence of a dispositive intention on the assessing dates, for it is well settled that entitlement to tax exemption is governed by the facts and circumstances prevailing on those dates. Jersey City v. Montville Tp., 84 N.J.L. 43, 85 A. 838 (Sup.Ct.1913), aff’d per curiam 85 N.J.L. 372, 91 A. 1069 (E. & A.1913); Shelton College v. Ringwood, 48 *598 N.J.Super. 10,136 A.2d 660 (App.Div.1957); Emanuel Missionary Baptist Church v. Newark, 1 N.J.Tax 264 (Tax Ct.1980). The critical assessing dates in this case are October 1, 1978 and October 1, 1979. N.J.S.A. 54:4-23. On those dates defendant was actively engaged in efforts to sell the subject property, and those efforts, which began in April 1978 and continued well past the assessing date for the later of the two years in issue, were not finally thwarted until March 1980, some five months after the last assessing date in issue. Indeed, the formal, written cancellation of the option agreements was not effected until September 9,1980, almost one year after the last assessing date.
I conclude, therefore, that, on the critical assessing dates in this case, the subject property was not intended to be used, nor was it solely devoted or held, for burial purposes within the contemplation of N.J.S.A. 54:4-3.9.
Defendant argues that it relied upon plaintiff’s encouragement and assistance in connection with defendant’s efforts to sell the property And, thus, the interests of equity and justice require that plaintiff be precluded from restoring the property to the tax rolls. This argument has no merit. The record is devoid of proofs indicating that defendant would have followed a different course of action in the absence of plaintiff’s encouragement and support. Moreover, what defendant seeks is an estoppel, a doctrine not lightly invoked against government in tax matters, where the public interest is so vitally affected. Airwork Service Division v. Taxation Div. Director, 2 N.J.Tax 329 (Tax Ct. 1981), aff’d o.b. per curiam 4 N.J.Tax 532 (App.Div. 1982); Mayfair Holding Corp. v. North Bergen, 4 N.J.Tax 39 (Tax Ct. 1982). To invoke estoppel against a governmental agency the circumstances must be extreme. Pennyton Homes, Inc. v. Stanhope Planning Bd., 78 N.J.Super. 588, 189 A.2d 838 (App.Div.1963). No such extremity has been shown here.
Judgment will be entered reversing the judgments of the Hudson County Board of Taxation and restoring the original assessments for 1979 and 1980.